LOTTINGER, Judge.
This a suit by Marion C. Cary and other owners of a house, as petitioners, against the Louisiana Department of Highways as *458 defendant, for the recovery of damages caused the said house pending the removal of same under contract with the defendant. The Lower Court granted judgment in favor of petitioners and against defendant in the sum of $6,370.00. The defendant has taken a suspensive appeal.
The record discloses that, in conjunction with the interstate highway program, certain property, exclusive of a house which is the subject of this litigation, was acquired by defendant from petitioners. By contract dated September 30, 1964, the defendant purchased the property from petitioners and agreed to remove the petitioners’ single story frame residence to other property of petitioners which adjoined the property acquired by the defendant. The contract further provided for consequential damages to the adjoining property of petitioners.
The portions of this contract pertinent to this suit provides as follows :
“It is understood and agreed that the Department shall remove Vendors’ single story frame residence situated on the project centerline at approximately Highway Survey Station 784+85 and shall relocate same on Vendors’ remaining property to the left of the centerline at a site to be agreed upon between Vendor and Department’s Project Engineer but within 150 feet of its present location.”
* * * * * *
“Vendors shall vacate the property here-inabove described as Parcels Nos. 7-9 and 7-22 and deliver possession of same unto Department within Thirty (30) days of the receipt of payment of the consideration hereinabove set forth.”
Approximately one month after the signing of the contract, the petitioners vacated the residence because, according to their understanding, it was to be removed by defendant within a short period of time. Subsequently, the record shows' that vandals attacked and stripped the residence, and this, combined with the force of the elements, caused the residence to become uninhabitable as the result of such abuse and deterioration.
Finally, some seventeen months after the date of the contract, the defendant finally relocated the residence on the designated property.
The petitioners claim that as a result of the delay caused by the defendant they have suffered damages in the total sum of $17,446.84. This contention is based upon the allegation that the defendant is liable for the damages sustained because of its neglect and failure to provide safeguards for its protection.
The Department of Highways on the other hand, contends that the contract made no provision for the care and protection of the residence and that this obligation remained the responsibility of the owners thereof. The reason for the delay in relocating the house, as given by defendant, was that it was awaiting the receipt of Federal funds.
Several of the witnesses have testified on behalf of petitioners indicating that the representative of the defendant, Mr. Kenneth Head, advised them that the house would be removed during the month of December, 1964, and, in contemplation of this move the occupants moved out one month before.
Although Mr. Head specifically denied that he made any such statement, there is testimony of certain employees of the defendant which indicates that the State felt that Federal funds would be available in *459 December to help commence the project and that this information was given to the petitioners. Although the Lower Court did not believe that any definite promises were made in this respect, it was of the opinion that representations were made which lead the petitioners to rely on this information. The evidence further indicates that other information was relayed to the property owners indicating possible future dates for the proposed relocation, all of which were based upon times that the hoped for Federal funds would be available.
Although the contract between the parties specified no time limit for the removal of the residence by defendant, we believe that a reasonable period of time was implied. In Guzzo v. Liggio, 224 La. 313, 69 So.2d 357, the Court said:
“In any event, when no time for performance of a contract is stipulated, a reasonable time is implied, to be determined by the circumstances of the particular case.”
We feel that a reasonable period of time for the defendant to comply with its obligation to remove the house was the period from September 30, until the month of December when the petitioners actually vacated the premises.
Articles 2926, 2937 and 2938 of the Louisiana Civil Code provide as follows:
“Art. 2926. A deposit in general, is an act by which a person receives the property of another, binding himself to preserve it and return it in kind.”
“Art. 2937. The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property.”
“Art. 2938. The provision in the preceding article is to be rigorously enforced:
1. Where the deposit has been made by the request of the depositary.
2. If it has been agreed that he shall have a reward for preserving the deposit.
3. If the deposit was made solely for his advantage.
4. If it has been expressly agreed that the depositary should be answerable for all neglects.”
When petitioners vacated the premises, the defendant herein became a depositary under the provisions of Articles'2926, 2937 and 2938 of the Louisiana Civil Code. Furthermore, as provided by Article 2938, the deposit was made solely for the advantage of the depositary and, therefore, the depositary became bound to use the same diligence in preserving the deposit that he uses in preserving his own property.
In Bickham Motors, Inc. v. Craine, La.App., 185 So.2d 271, we held a keeper entrusted by the Sheriff with the protection and preservation of property during seizure to be a depositary as defined by the Civil Code, and held him liable for damages caused by his negligence. Of course, under the provisions of Article 2945 of the Code, he is not liable for liability for damages for diminution in value resulting from ordinary deterioration and depreciation.
In Plummer v. Motors Insurance Corp., 233 La. 340, 96 So.2d 605, the Supreme Court held that when the insurance company took possession of the petitioner’s damaged truck for the purpose of repairing fire damage to the vehicle, the company became a depositary under the Articles of *460 2926 and, under Article 2937, as depositary it was bound to use the same diligence in preserving the vehicle that it uses in preserving its own property.
The record indicated that several times during the interval of this deposit, the plaintiffs called defendant to advise it of acts of vandalism against the property. Although defendant did take certain measures in connection with surveillance of the property after these complaints, these measures were not effective and substantial vandalism and damage was done the premises.
We, therefore, feel that the defendant is liable to petitioners for damages caused by the negligence of defendant during the period that the residence was on deposit with defendant.
The witnesses for both sides agreed that the house, with the exception of exterior painting, was in good condition prior to the sale of the property to the defendant.
Mr. Ralph A. Riles, who testified on behalf of petitioners regarding the cost of rehabilitating the house to its former condition, testified that his first estimate made during October, 1965, in the sum of $4,-897.60, included $1,800.00 for the moving and hooking up of utilities. He subsequently made another estimate for $13,585.-60 in September, 1967, which did not include the moving of the house because it had already been accomplished. He stated that the difference between the two estimates reflect the great damage that had taken place between his two estimates.
Mr. Lloyd Rockhold, an expert estimator and consulting engineer, testified on behalf of defendant. He testified that the house could be put back into a livable condition for the sum of $9,000.00, and that this estimate was substantiated by a bid from a responsible contractor. Certain other items of damages, concerning which Mr. Rock-hold testified, were held by the Court as the responsibility of the owners as they accrued subsequent to the relocation of the residence. These items are: (1) Replacement of windows and reglazing of the interior French doors at $1,875.00, (2) Restoration of the paneling in living room and dining room at $315.00, and (3) Repainting the exterior of the house at $440.00. The latter was discounted because the evidence reflected that the house required a paint job prior to the acquisition of the real estate by the defendant.
The Lower Court accepted the estimate as made by Mr. Rockhold, awarding petitioners the sum of $6,370.00. As there was no evidence in the record to disclose that petitioners lost income because of inability to rent the house during the intervening period of time, no damages were allowed for loss of income by the Lower Court.
In view of the fact that the record discloses a substantial amount of damages to petitioners’ house during the period of time in question, the damages consisting of certain paneling being removed from the walls, practically all window panes being broken, removal of all fixtures in the bath room, as well as cabinets from the kitchen and, generally, the complete stripping and sacking of the house, and in view of the apparent exterior damages done, we feel that the amount of damages as allowed below was certainly justified.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by defendant.
Judgment affirmed.